UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK JAMES JUIDE,

                Plaintiff,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS,
PAUL KLEE,
WILLIS CHAPMAN,
RICHARD WHITE,
DAVE MARTIN,
JERRY TANNER, and
ROBIN (DONAGHY) COLEMAN,

                Defendants.

_____/

Case No. 2:19-cv-12029
District Judge Sean F. Cox
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S AUGUST 7, 2019 REQUEST (ECF No. 7) and GRANT IN PART & DENY IN PART THE MDOC DEFENDANTS' DISPOSITIVE MOTION (ECF No. 21)

I.    **RECOMMENDATION**:  The Court should **GRANT** Plaintiff's August 7, 2019 request (ECF No. 7) to the extent it seeks payment of a single filing fee and **GRANT IN PART** and **DENY IN PART** Defendants' dispositive motion (ECF No. 21).

II.    **REPORT:**

    A.    **Background**

According to his verified complaint, Plaintiff is a paraplegic and confined to a wheelchair.  (ECF No. 1, ¶ 10.)  He claims that the Michigan Department of Corrections' (MDOC's) Gus Harrison Correctional Facility's (ARF's) 3-Unit wheelchair lift "has been the subject of what can only be described as routine and protracted episodes of disrepair, dilapidation and being out of Service, resulting in Plaintiff's continual confinement to the lower level of 3-Unit[.]"  (ECF No. 1, ¶ 13.)

On July 14, 2016, while incarcerated at ARF, Plaintiff submitted a grievance (ARF-16-07-1599-03f), which named Klee, Chapman, Martin, Tanner and Donaghy and alleged that the wheelchair lift had been inoperable since July 9, 2016.  (*Id.*, ¶ 15; *see also* ECF No. 21-3, PageID.131.)  *Thereafter*, Plaintiff claims, Defendants retaliated against him, such as:

- Placing him in segregation on July 15, 2016 "in a cell that did not have either bedding or toilet accessibility for Plaintiff[,] forcing him to remain sitting upright in his wheelchair for over 13 hours without accessible toilet facilities and languishing in his own bodily waste;"

- Moving him on July 16, 2016 "to a housing unit in Level 4 that likewise did not have an operable wheelchair lift or toilet facilities accessible to Plaintiff[;]"

- Improperly acting as the Step I respondent to or Step II reviewer of a grievance or grievance appeal in derogation of

2

due process and MDOC Policy, "thereby rendering the grievance process nugatory;"[1]

- "[D]epriving him of access to health care and proper meals."

(*See* ECF No. 1, ¶¶ 16, 18-19.)  Plaintiff contends that, notwithstanding his pursuit of the administrative grievance process and numerous informal discussions, "defendants continue to engage in the unconstitutional conduct that is the basis of this complaint[.]"  (*Id.*, ¶ 17.)

## B.    Prior Case

On October 25, 2016, while incarcerated at the MDOC's Oaks Correctional Facility (ECF), Mack James Juide (#441625) initiated a lawsuit against the MDOC, six of its employees, and two of its contractors, concerning a wheelchair lift at ARF.  *See Juide v. Michigan Department of Corrections, et al.*, Case No. 2:16-cv-13806-SFC-APP (E.D. Mich.) (ECF Nos. 1, ¶¶ 12-17; ECF No. 29, PageID.141-142).  Plaintiff proceeded *in forma pauperis*.  (ECF Nos. 2, 5.)

The case was referred to the Undersigned for pretrial matters.  (ECF No. 7.) In September and November 2017, the Court granted the two contractor Defendants' motions to dismiss.  (ECF Nos. 41, 49.)  On December 26, 2018, I

---

[1] For example, the late-July 2016 Step I response in ARF-16-07-1599-03f was signed by S. Kindinger and Defendant Willis Chapman.  (ECF No. 21-3, PageID.131.)  Also, in another grievance (ARF-16-08-1952-28K), Plaintiff claims that Chapman improperly acted as the reviewer of ARF-16-08-1883-28a.  (*Id.*, PageID.128.)

3

entered a report and recommendation to deny Plaintiff's motion for summary

judgment and grant the MDOC Defendants' motion for summary judgment.  (ECF

No. 67.)  Specifically, I recommended that the Court grant the MDOC Defendant's

motion for summary judgment based on failure to exhaust administrative remedies,

dismiss Plaintiff's claims against them without prejudice, and deny Plaintiff's own

motion for summary judgment.  (ECF No. 67, PageID.490-491.)  In February and

March 2019, Judge Cox adopted the report and recommendation and entered

judgment.  (ECF Nos. 70, 71, 73.)

### C.    Instant Case

On July 9, 2019, while incarcerated at ECF, Plaintiff filed a verified

complaint against seven Defendants – (1) the MDOC; (2) Paul Klee, ARF's

Warden; (3) Willis Chapman, ARF's Deputy Warden; (4) Richard White, ARF's

Head of Maintenance; (5) Dave Martin, an ARF Resident Unit Manager (RUM);

(6) Jerry Tanner, an ARF Assistant Resident Unit Supervisor (ARUS); and, (7)

Robin (Donaghy) Coleman, an ARF ARUS – in their official and individual

capacities.  (ECF No. 1, ¶¶ 2-7; *see also* ECF No. 19.)  Plaintiff's causes of action

are based upon the First and Eighth Amendments to the U.S. Constitution, the

Americans with Disabilities Act (42 U.S.C. §§ 12101, *et seq*.), the Rehabilitation

Act (29 U.S.C. §§ 701, *et seq*.), and the Michigan Persons with Disabilities Civil

Rights Act (Mich. Comp. Laws §§ 37.1101, *et seq*.).  (*Id*., ¶¶ 8, 21-38.)[2]  He seeks

monetary and declaratory relief.  (*Id*., ¶¶ 39-40.)

On October 10, 2019, Judge Cox entered an order, which:  (1) dismissed

Plaintiff's ADA and Rehabilitation Act claims against Defendants Klee, Chapman,

White, Martin, Tanner, and Donaghy in their personal capacities for failure to state

a claim; (2) dismissed Plaintiff's claims filed under the Michigan Persons With

Disabilities (Civil Rights) Act (MPDCRA) with respect to all defendants; (3)

dismissed Plaintiff's Eighth Amendment claims against the MDOC and

Defendants Klee, Chapman, White, Martin, Tanner, and Donaghy in their official

capacities because they are entitled to Eleventh Amendment immunity; and, (4)

concluded that Plaintiff's remaining claims and defendants survive the Court's

initial screening under 28 U.S.C. §§ 1915(e)(2)(B).  (ECF No. 8, PageID.36.)

## D.   Remaining Claims

Following the Court's opinion and order of partial dismissal, it is helpful to

specify which Defendants and claims survive.  First, to the extent there were any

claims against *departmental Defendant MDOC*, they have been dismissed.

---

[2] It appears that Plaintiff's ADA claims are based upon alleged violations of 42
U.S.C. § 12203 ("Prohibition against retaliation and coercion") and/or 28 C.F.R. §
35.152 ("Jails, detention and correctional facilities, and community correctional
facilities.") and that Plaintiff's discrimination claims are based on alleged
violations of 29 U.S.C. § 794 ("Nondiscrimination under Federal grants and
programs").  (ECF No. 1, ¶¶ 8, 24, 27-28, 31.)

Although the MDOC was listed as a Defendant in the case caption and defined as having "exclusive jurisdiction, control, and custody over Plaintiff during times relevant to the transactions and occurrences alleged . . ." in the complaint, it does not seem that the MDOC is mentioned within Plaintiff's causes of action. (*Compare* ECF No. 1, ¶¶ 1, 2 & 18; *with id.*, ¶¶ 21-38.) Nonetheless, the Court's opinion and order of partial dismissal dismissed "Plaintiff's Eighth Amendment claims against the Michigan Department of Corrections" as barred by the Eleventh Amendment. (ECF No. 8, PageID.35-36.) Also, the order noted that, "to the extent that Plaintiff asserts a claim for injunctive relief against any defendants in their official capacities, such a claim would be moot because Plaintiff is no longer confined at the facility where the complained-of conduct occurred." (*Id*.) Accordingly, this report assumes that any claim against the MDOC has been dismissed, as have any claims for declaratory relief against the individual Defendants. (*See* ECF No. 1, ¶ 40.) *See also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.").

In sum, the Court is left to consider *monetary damages* claims against the *individual Defendants*, specifically: (1) Plaintiff's First Amendment damages claims against Defendants Klee, Chapman, Martin, Tanner and Donaghy in their

official and individual capacities concerning placement in segregation (*see* ECF No. 1, ¶¶ 26-32); (2) Plaintiff's Eighth Amendment damages claims against Defendants Klee, Chapman, Martin, Tanner and Donaghy in their personal capacities concerning placement in segregation and in a custody setting higher than his actual security classification (*see* ECF No. 1, ¶¶ 21-25); (3) Plaintiff's Eighth Amendment damages claims against unspecified Defendants regarding deprivation of "proper medical treatment," "access to medically necessary aids" and "privacy," (*see* ECF No. 1, ¶¶ 33-35); and, (4) Plaintiff's Eighth Amendment damages claims against Defendants Klee, Chapman, White, Martin, Tanner, and Donaghy in their personal capacities concerning maintenance of the wheelchair lift (ECF No. 1, ¶ 36-38).[3]

### E.   The Filing Fee

"The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350 . . . ." 28 U.S.C. § 1914(a). "The court may allow a plaintiff to proceed *in forma pauperis* ('IFP') with a waiver of the prepaid .

---

[3] In October 2019, the case was stayed "for a period of ninety (90) days to allow plaintiff and defendant(s) an opportunity to participate in mediation to settle their dispute before the defendant(s) are formally served, an answer is filed, or the discovery process begins." (ECF No. 9, ¶ 2.) On January 7, 2020, the Court lifted the stay and ordered the U.S. Marshal Service to serve Defendants. (ECF No. 13.) Hopefully, this clears up any confusion Plaintiff had in January 2020 about the status of his case. (*See* ECF No. 16.)

. . filing fee if the plaintiff provides an affidavit listing his assets and stating his inability to pay the fee." *Hoeft-Ross v. Hoeft*, No. CV-N-05-0121-HDM (VPC), 2005 WL 8161746, at *1 (D. Nev. May 23, 2005) (citing 28 U.S.C. §§ 1914(a), 1915(a)(1)).

At the time he filed this lawsuit, Plaintiff sought to proceed *in forma pauperis*. (ECF No. 2.)  On July 23, 2019, the Court entered an order waiving prepayment of the filing fee and directing periodic subsequent payments of the filing fee.  (ECF No. 5.)  Shortly thereafter, Plaintiff filed what amounts to a motion for reconsideration, wherein he points to his earlier case – Case No. 2:16-cv-13806-SFC-APP (E.D. Mich.) – and asks for waiver of the filing fee in this action.  (ECF No. 7, PageID.28.)  Plaintiff followed up with this request in September 2019 and again in January 2020.  (ECF Nos. 12, 16.)

Plaintiff was paroled from the MDOC on March 10, 2020.[4]  On March 19, 2020, he filed a notice of address change to a private address in Detroit, MI.  (ECF No. 18.)  Although Plaintiff lists a zip code of 48203, it appears the proper code is 48201.[5]  Still, it does not appear that any of the many items mailed to Plaintiff by this Court, whether before or after his parole – *see*, *e.g.*, ECF Nos. 8, 9, 11, 13, 14,

---

[4] *See* www.michigan.gov/corrections, "Offender Search" (last visited Sept. 30, 2020).

[5] *See* https://www.whitepages.com (last visited Sept. 30, 2020) and https://tools.usps.com/zip-code-lookup.htm?byaddress (last visited Sept. 30, 2020).

22 – have been returned as undeliverable. (*See also* ECF Nos. 3, 4, 5, 6, and 15.)

Plaintiff is reminded that he must keep the Court apprised of his current street

address (including the proper ZIP Code), e-mail address, and telephone number.

*See* E.D. Mich. LR 5.1(a)(1)(E)(ii), E.D. Mich. LR 11.2.

As of September 4, 2020, Plaintiff had paid $124.09 of the filing fee in the

2016 case and $26.62 of the filing fee in the instant case, with the most recent

payment in each case having been received on June 18, 2020. Upon consideration

of the similarity between these cases, the Court should grant Plaintiff's August 7,

2019 request and only require that he pay $350.00 in total.

### F.    Pending Dispositive Motion

On April 2, 2020, the seven Defendants filed a jury demand (ECF No. 20)

and a combined motion for partial summary judgment based on failure to exhaust

and motion to dismiss based on Eleventh Amendment immunity (ECF No. 21). In

the absence of an order stating otherwise, Plaintiff's response to Defendants'

combined dispositive motion would have been due on or about Thursday, April 23,

2020. E.D. Mich. LR 7.1(e)(1)(B). Still, on April 6, 2020, I entered an order,

which provided that Plaintiff "shall file a response to the above document on or

before May 11, 2020." (ECF No. 22.) That same day, a copy of the order was sent

to Plaintiff at his address of record, although the certificate of service was not

placed on the docket until August 3, 2020.

Notwithstanding E.D. Mich. LR 7.1(e)'s briefing schedule and the Court's order requiring response (ECF No. 22), Plaintiff has not – to date – filed a response or a motion for extension of time.  In fact, he has only filed six matters in this case – ECF Nos. 1, 2, 7, 12, 16 and 18 – that latest of which was his March 2020 notice of address change.  Accordingly, Defendants' motion (ECF No. 21) is unopposed.  *See* E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available.").  Still, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.  The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden."  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  Thus, notwithstanding the unopposed status of this motion, the Court will carefully consider the merits of Defendants' arguments, as framed by Plaintiff's complaint (ECF No. 1), to ensure that Defendants have discharged their burden.  Such review is also warranted in this matter, because – in other matters – this Court has recently noted "perfunctory briefing" by the MDOC (*see Abel v. Lyon*, Case No. 2:19-cv-12556-NGE-EAS (E.D. Mich. Aug. 4, 2020) and that MDOC Defendants had not met their burden to show that claims against a defendant were unexhausted (*Bynum v. Kerr et al.*, Case 2:19-cv-11858-DPH-RSW (E.D. Mich. Aug. 17, 2020).

10

G.     Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

11

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

12

(quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

### H.    Discussion

1.    **Whether Plaintiff properly exhausted his available administrative remedies as to his First and Eighth Amendment claims for monetary relief against the individual Defendants in their personal capacities?**

### a.    Prison Litigation Reform Act

The plain language of the PLRA makes clear that "no action shall be brought with respect to prison conditions under 1983, or any other Federal law, by a prisoner confined in any jail, … until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, Plaintiff was required to exhaust all of his remaining claims against the MDOC Defendants – whether based on the First Amendment or Eighth Amendment – as such claims are brought under 42 U.S.C. § 1983.

13

The prison's grievance process – here MDOC PD 03.02.130 ("Prisoner / Parolee Grievances") – determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). At the time of the events in question, the July 9, 2007 version was in effect. (ECF No. 21-2.)[6]

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. Still, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012). Yet, for the reasons stated below, Defendants have not adequately sustained this burden.

### b.   Plaintiff's four ARF Step III grievance appeals

The MDOC Defendants argue that Plaintiff failed to properly exhaust his administrative remedies as to his claims against them. (ECF No. 21, PageID.87,

---

[6] The current, March 18, 2019 version of this policy superseded the July 9, 2007 version. *See* https://www.michigan.gov/documents/corrections (last visited Sept. 30, 2020).

14

93-96.) They have supplied the Court with Plaintiff's Step III Grievance Report, as well as the underlying relevant grievance documents. (*See* ECF No. 21-3.) Because the exhaustion requirement is mandatory, and a district court does not have discretion under the PLRA to allow a plaintiff's claim to proceed despite his failure to exhaust such remedies, *Woodford*, 548 U.S. at 85; 42 U.S.C. § 1997e(c)(1), and because failure to exhaust administrative remedies is an affirmative defense that can be asserted at any time before or during trial, *see* Fed. R. Civ. P. 12(h)(2), I will consider the MDOC Defendants' failure to exhaust argument asserted here.

Plaintiff's Step III Grievance Report identifies all grievances that Plaintiff pursued through Step III of the grievance process between January 1, 2013 and October 18, 2019, the date the report was generated. (ECF No. 21-3.) The Report indicates that Plaintiff filed four Step III grievance appeals – as to which he received a response – while he was incarcerated at ARF:

> 1) <u>Grievance No. ARF-16-07-1628-03E (ARF Lock # 4-126-B or 3-133-B)</u>: This concerns Plaintiff's cell toilet and the handicap bars being on the wrong side. It was received at Step I on July 19th, and the July 22nd response appears to have been signed by Richard White – seemingly a Physical Plant Supervisor / Superintendent– and K. Cheney. (ECF No. 21-3, PageID.144.)

> 2) <u>Grievance No. ARF-16-08-1911-27C (ARF Lock # 3-133-B)</u>: This names Klee, Chapman, Martin and Donaghy, mentions that the wheelchair lift became inoperable on August 13, 2016, and claims that "[d]epriving me of hot meals on three occasions was retaliatory conduct." It was received at Step I on August

18th, and the response was signed by Grievance Coordinator Ream and Deputy Warden D. Ricumstrict.  (*See* ECF No. 21-3, PageID.136, 138.)  The October 2016 Step II response was signed by Defendant Klee.  (*Id*., PageID.135.)

3)   Grievance No. ARF-16-08-1952-28K (ARF Lock # 3-133-B):  This grievance names Chapman and alleges that he improperly acted as the reviewer of Plaintiff's Step I grievance in ARF-16-08-1883-28a in violation of MDOC PD 03.02.130 ¶ U and that this has occurred before.[7]  It was received at Step I on August 24th, and the August 24th response / rejection was signed by Grievance Coordinator Ream and Deputy Warden D. Ricumstrict.  (*See* ECF No. 21-3, PageID.118, 128-129.)  The October 2016 Step II response was signed by Defendant Klee.  (*Id*., PageID.125, 127.)

4)   Grievance No. ARF-16-09-2143-17B (ECF Lock # 7-146):  This grievance names Martin and alleges that he violated MDOC PD 03.02.130 ¶ K and MDOC PD 03.03.130 ¶ I(6).[8]  More specifically, Plaintiff contends that Defendant Martin placed him in segregation and then Level IV, and on September 9th transferred him from ARF to ECF.  Plaintiff claims these things happened as a result of his numerous grievances / complaints about "ARF's inability to accommodate inmates in wheelchairs[,]" and/or ARF's "wheelchair elevators being

---

[7] This paragraph provides that "Prisoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent[,]" MDOC PD 03.02.130 ¶ U, effective July 9, 2007.

[8] These paragraphs provide that:  (a) "A grievant shall not be penalized in any way for filing a grievance except as provided in this policy for misusing the grievance process. Staff shall avoid any action that gives the appearance of reprisal for using the grievance process[,]" MDOC PD 03.02.130 ¶ K, effective July 9, 2007; and, (b) "Staff also are prohibited from retaliating against a prisoner who refuses to participate in prohibited staff conduct or who files a complaint or cooperates in an investigation of prohibited staff conduct."  MDOC PD 03.03.130 ("Humane Treatment And Living Conditions For Prisoners") ¶ I(6), effective Oct. 1, 2019.

16

> inoperable . . . ." It was received at Step I on September 16th,
> and the response was signed by Assistant RUM R. Nichols and
> Deputy Warden D. Ricumstrict. (*See* ECF No. 21-3,
> PageID.122.) The November 2016 Step II response was signed
> by Deputy Warden D. Ricumstrict. (*Id.*, PageID.120-121.)

(ECF No. 21-3, PageID.116, 118.) The report also notes that, on September 8,

2016, the Step III appeal in ARF-16-07-1645-17B was returned to Plaintiff under

cover letter requesting Step I & II documents. (ECF No. 21-3, PageID.118.)

The MDOC Defendants argue that of the four ARF grievances that Plaintiff

pursued "through Step III . . . [,]" only Grievance ARF-16-09-2143-17B relates to

Plaintiff's current claims. (ECF No. 21, PageID.94.) The Court should disagree.

Preliminarily, while Defendants argue that ARF-1628, ARF-1911 and ARF-1952

"*cannot* serve to exhaust the claims now before the Court[,]" (*id.*, PageID.94, n.6

(emphasis added)), each of these three grievances was submitted after the alleged

protected conduct (*i.e.*, the July 15th submission of ARF-16-07-1599-03f). Thus,

from a timing perspective, it is possible that these three grievances complained

about matters within Plaintiff's complaint, such as the alleged July 15, 2016

placement in segregation or the alleged July 16, 2016 move to a housing unit with

an inoperative wheelchair lift and without accessible toilet facilities.

More importantly, the subject matter of these three grievances is consistent

with at least some portions of Plaintiff's operative pleading. For example, even if

ARF-1628 does not name particular Defendants, the July 16, 2016 incident date

and the complaint about the cell's toilet and handicap bars, as well as the mention of MDOC PD 04.06.160 ("Medical Details and Special Accommodation Notices"), are consistent with Plaintiff's claims that he was placed in segregation on July 15th and moved to a housing unit in Level 4 on July 16th, both of which lacked accessible toilet facilities.  (ECF No. 21-3, PageID.144; ECF No. 1, ¶ 16.)  Better yet, ARF-1911 names Defendants Klee, Chapman, Martin and Donaghy, claims the wheelchair lift became inoperable on August 13, 2016, and contends that "[d]epriving me of hot meals on three occasions was retaliatory conduct[,]" (PageID.136, 138); therefore, it is consistent with Plaintiff's allegations of continuing violations and deprivation of proper meals (ECF No. 1, ¶¶ 17, 19). Finally, ARF-1952 names Chapman, lists an incident date of August 22nd, and alleges that on two occasions he has improperly participated in the grievance process in violation of MDOC PD 03.02.130 ¶ U (ECF No. 21-3, PageID.128); therefore, it is consistent with Plaintiff's complaint's allegations of continuing violations and description of Defendant Chapman's grievance participation in derogation of "due process and MDOC Policy," (ECF No. 1, ¶ 17, 18).  It is inaccurate to say that these three grievances "complain about other issues[.]"  (ECF No. 21, PageID.94 n.6.)  In sum, Defendants have not discharged their burden to show that these three grievances "*cannot* serve to exhaust the claims now before the Court."  (*Id*. (emphasis added).)  *See Carver*, 946 F.2d at 455; *Stansberry*, 651

F.3d at 486; and, *Surles*, 678 F.3d at 456.  And, to the extent Defendants claim that "not all of [these grievances] were properly filed . . . [,]" (*id*.), they do not explain the alleged impropriety.

Next, while Defendants point out that ARF-2143 is based on a September 9th incident – *i.e.*, the September 9, 2016 transfer from ARF to ECF – and admit that it "alleges retaliation and references RUM Martin," Defendants also contend that ARF-2143 "does not allege that the MDOC or any of the other MDOC Defendants retaliated against Juide," *i.e.*, Plaintiff "did not at Step I name either the MDOC or MDOC Defendants Klee, Chapman, White, Tanner, or Donaghy (Coleman)," despite the requirement that "names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ R.  (*Id*., PageID.94-95; ECF No. 21-3, PageID.122.)  Nor, Defendants argue, does ARF-2143 "exhaust against any MDOC Defendant Juide's personal-capacity Eighth Amendment claims that may still exist."  (*Id*., PageID.95.)  However, even if *this* ARF Step III grievance only exhausted First Amendment retaliation claims against Defendant Martin, it remains that Defendants have not shown that the *other* ARF Step III grievances – ARF-1628, ARF-1911 or ARF-1952 – fail to exhaust Plaintiff's First Amendment claims against Defendants Klee, Chapman, Tanner and Donaghy (ECF No. 1, ¶¶ 26-32) or Plaintiff's Eighth Amendment claims to the extent they are brought against any of the six individual Defendants (ECF No. 1, ¶¶ 21-25, 33-38).

19

Finally, Defendants point out that ARF-16-07-1599-03f is not listed in the "MDOC Prisoner Step III Grievance Report[,]" (ECF No. 21-3, PageID.111-118, 131); therefore, it was not pursued "through all three steps of the grievance process[,]" and "does not help Juide for exhaustion purposes." (ECF No. 21, PageID.95-96.) However, as the Undersigned sees it, ARF-1599 was the "protected conduct," and Plaintiff's subsequent placement into segregation was the alleged "adverse action." (ECF No. 1, ¶¶ 27-32.) Stated otherwise, the Court would not consider whether ARF-1599 – the alleged July 14, 2016 submission of which formed the basis of his First Amendment retaliation claim (ECF No. 1, ¶ 15) – operates to exhaust Plaintiff's claims that Defendants took retaliatory actions on July 15th, July 16th, or thereafter (ECF No. 1, ¶¶ 16-20).

> **2.  Whether Plaintiff's First Amendment claims for monetary relief against the individual Defendants in their official capacities are barred by the Eleventh Amendment?**

Plaintiff sues Defendants in their official and individual capacities. (ECF No. 1, PageID.1.) In addition to the foregoing exhaustion argument, Defendants contend that they "are also immune from suit under the Eleventh Amendment." (ECF No. 21, PageID.96-97.) The Court has already stated that "Plaintiff's Eighth Amendment claims for monetary relief against the MDOC and the other defendants in their official capacities must be dismissed under the Eleventh Amendment." (ECF No. 8, PageID.35-36.) For the same reasons, the Court

should dismiss Plaintiff's First Amendment claims for monetary relief against Defendants Klee, Chapman, White, Martin, Tanner, and (Donaghy) Coleman in their official capacities.

## I.    Conclusion

The Court should **GRANT** Plaintiff's August 7, 2019 request (ECF No. 7) to the extent it seeks payment of a single filing fee, as set forth above in Section II.E.  Moreover, as set forth in Section II.H.1, Defendants have failed to discharge their burden on exhaustion as to Plaintiff's First and Eighth Amendment damages claims against the individual Defendants in their personal capacities, and such claims should survive summary judgment.  However, as set forth in Section II.H.2, Plaintiff's corresponding claims for monetary relief against the six individual Defendants in their official capacities are barred by the Eleventh Amendment, and such claims should be dismissed.  Accordingly, the Court should **GRANT IN PART** and **DENY IN PART** Defendants' dispositive motion (ECF No. 21).

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

21

505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: October 5, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE